## Hannah E. Rand *vs.* Stuart O. Symonds.

### Cumberland.  Opinion March 30, 1921.

*Verdict for plaintiff not warranted by the evidence, as the testimony fails to disclose a fair preponderance of evidence in favor of plaintiff's claim by adverse possession, and the defendant has a better record title.*

This is a real action wherein the plaintiff demands possession of certain real estate claimed both by adverse possession and by record title. Verdict for plaintiff.

*Held:*

1.  The testimony contained in the record does not disclose a fair preponderance of evidence in favor of the plaintiff's claim by adverse possession.

2.  As to record title, the plaintiff presents three deeds, the first bearing date of March 4, A. D. 1739; the second, bearing date of April 1, A. D. 1748; the third is a quit-claim deed to herself dated April 18, 1864, leaving a gap of one hundred sixteen years, so far as her record title is concerned, between the quit-claim deed, by which she claims to hold, and the next prior conveyance in her chain of title. On the other hand, the defendant offers a warranty deed dated December 16, 1841, which is twenty-three years earlier than the plaintiff's quit-claim deed, and presents intermediate deeds without break in the chain tracing direct title to himself, his immediate conveyance being a warranty deed, under which he has held for more than forty years.

3.  That the defendant has the better record title; that the jury must have failed to understand the rules of law pertaining to the case, and the application of the evidence to those rules of law, with the result that their verdict was manifestly wrong.

On motion.  This is a real action brought to recover possession of certain real estate situate in the town of Cape Elizabeth, the plaintiff relying on title by adverse possession and by quit-claim deed. Defendant relied on a title derived from a warrantee deed antedating the quit-claim deed under which plaintiff claimed. Verdict was for plaintiff and the defendant filed a motion for a new trial. Motion sustained. New trial granted.

Case is stated in the opinion.
*W. R. & E. S. Anthoine,* for plaintiff.
*Frank H. Purinton,* for defendant.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, MORRILL, JJ.

PHILBROOK, J.    This is a real action, wherein the plaintiff demands possession of certain real estate situate in the town of Cape Elizabeth. She describes the land in her declaration as follows:

"A certain piece or parcel of land situate in Cape Elizabeth, aforesaid, known as the 'Little Marsh Lot,' containing 6 acres and 106 square rods, be it more or less. It one-third part of Twenty acres conveyed by Joshua Woodbury to Joshua Woodbury, by his deed dated April 1, A. D. 1748 (duly recorded) and by Tobias Pillsbury, et als., to the said Hannah E. Rand, by deed dated April 18, A. D. 1864 (duly recorded) and more particularly shown on plan of James Johnson made in June 1863 as follows:    Beginning at a point on said plan, designated and shown as 'marked Hemlock Tree' thence southerly about twelve rods to a point marked by a pile of stones, being the northwesterly corner of a lot sold by Watson C. Rand to Joseph W. Symonds; thence, easterly at about right angles to last described line, eighty-seven and one-half rods, more or less, to a point in land now of the defendant; thence, northerly at about right angles to last described course, by line of said defendant's land, twelve rods, more or less, to a point shown on the said Johnson plan as 'marked spruce tree;' thence westerly at about right angles to last described course, eighty-seven and one-half rods, more or less, to said hemlock tree and point of beginning; being the lot shown on said Johnson plan as 'Mr. Pillsbury's lot;' said lot now being bounded northerly by other land of the said plaintiff and of Susan Davis; westerly by other land of the said plaintiff; easterly and southerly by land of the said defendant."

The accompanying sketch may be of assistance in demonstrating the situation according to the claims of the parties as we are able to gather them from the record and the arguments of counsel.

The land in controversy is the rectangle HDEI, marked "Pillsbury Land," which plaintiff claims both by record title and by adverse possession.

A careful examination of the testimony does not disclose a fair preponderance of evidence in favor of the plaintiff's claim by adverse possession, although there is evidence of certain acts upon which the

defendant might claim trespass if he maintains his ownership of the premises in dispute. The plaintiff must, therefore, depend upon the strength of her record title. We will now examine that title as it appears from the conveyances offered by the plaintiff.

By reference to the declaration, it will be observed that she claims "one-third part of twenty acres conveyed by Joshua Woodbury to Joshua Woodbury by deed dated April 1, A. D. 1748." To show the antecedent links in the chain of title as to the twenty acres, she first offered the deed of John Perry to Joshua Woodbury dated January 30, A. D. 1730 which conveyed:

"A certain tract of swampy or meadow land situate lying and being in the township of Falmouth above said and it is bounded as followeth on the south side by my own land on the west by the common land, on the north by Ebenezer Allins deed. Contained ten acres be it upland or meadows together with all the privileges and appurtances thereunto belonging or anyways appertaining."

This conveyance is a warranty deed. As to the other ten acres, thus making up twenty acres, the plaintiff offered the deed of Thomas Westbrook to Joshua Woodbury dated March 4, A. D. 1739 which conveyed.

"A ten acre lot of land lying and being in the township of Falmouth, it being ye second lot in number beginning at an ash Tree marked 1:2 and thence fronting north eighteen rods to a white oak Tree marked 2:3; thence ye same width west ninety rods or till ye ten acres be completed, which was granted and laid out to William Gills ye 19th day of March 1727-8 by ye Committee as ye return on record appears."

This is a conveyance of land but with covenant only against claims from, by or under the grantor, his heirs and assigns. The next deed which the plaintiff offered is one given by Joshua Woodbury, the grantee in the two previous deeds, to his son Joshua Woodbury, Jr., dated April 1, 1748, as we have just seen, and conveyed

"One third part of two Ten acre lots called the 'Little Marsh lots,' which I purchased of John Perry and Colonel Thomas Westbrook, bounded reference being had unto said deeds. That third part that adjoineth unto Joseph Cobb ten acre lot."

This is also a conveyance of land but with covenant only against the claims or demands of any person laying legal title thereunto from, by or under the grantor. There is no deed offered showing convey-

ance from Joshua Woodbury, Jr. to anybody. The next deed which the plaintiff offered is the immediate one to herself, the grantors being Tobias Pillsbury, Joshua Pillsbury, Daniel Pillsbury and Mary E. Webb. This is a quit-claim deed, dated April 18, 1864 and conveys only the right, title and interest which the grantors had in and to

"A certain piece or parcel of land situated in Cape Elizabeth aforesaid, known as the 'Little Marsh lot' containing six acres and one hundred six square rods, be it more or less, it being one third part of twenty acres conveyed by Joshua Woodbury to Joshua Woodbury by his deed dated April 1, 1748."

This deed covenants only "against the lawful claims and demands of all persons claiming by, through or under us, but none others."

Thus it will be seen that in the plaintiff's chain of record title from 1748 to 1864, a period of one hundred sixteen years, there is a gap in which no conveyance appears by which the plaintiff can trace title to herself, and the deed by which she now claims title is merely a quit-claim of right, title and interest. On the other hand, as we shall later see, the defendant traces back to a warranty deed given in 1841 which was twenty-three years before the time when the plaintiff received her quit-claim deed.

Let us now examine the defendant's record title. It is conceded that the defendant is the son of Joseph W. Symonds, deceased, and that by devise, the defendant now has the same title to the land in controversy, which the father had at the time of his decease.

He begins with a warranty deed dated December 16, 1841 given by George Webster and Asa T. Webster to John D. Buzzell which conveyed a certain piece or parcel of wood and pasture land in Cape Elizabeth containing ten acres, more or less and bounded on the south by James Strout's land; on the west by land owned by the heirs of John Woodbury; on the north by land of the heirs of said Woodbury and the land of Widow Susan Davis; on the east by land which was descended to John Webster, father of the grantors. This conveyance would seem to cover land which was between the Strout land on the south and the Woodbury and Davis lands on the north, which would be the southerly and northerly boundaries respectively, of the Cobb and Pillsbury lots.

The next deed offered is also a warranty deed dated January 3, 1853 in which the same John D. Buzzell mentioned in the previous deed conveyed to Robert W. Dresser "Ten acres, more or less, being the

same conveyed to me by deed from George and Asa T. Webster, dated December 16, 1841, reference being made to the Webster deed for a description of the premises."

The next deed offered is also a warranty deed dated October 31, 1853 wherein the same Robert W. Dresser mentioned in the next previous deed, conveyed to Robert Dresser "Ten acres, more or less, being the same conveyed to me by Dr. John D. Buzzell of said Cape Elizabeth by deed of January 3, 1853."

The next deed offered is a quit-claim deed dated September 27, 1855 wherein Robert Dresser mentioned in the next previous deed conveyed to Thomas E. Knight all the right, title and interest which he obtained in and to two parcels of woodland which were conveyed to Robert by Robert W. Dresser by deed dated October 31, 1853.

The next deed offered is a quit-claim deed dated January 14, 1857, given by the same Thomas E. Knight, mentioned in the next previous deed to John W. Rand and the description states "Containing ten acres, more or less, and bounded on the south by James Strout's land; on the west, by land owned by the heirs of John Woodbury late of Cape Elizabeth; on the north, by land of the heirs of said John Woodbury and the land of Widow Susan Davis; on the east, by land which descended to John Webster from George Webster." This description corresponds quite nearly, if not exactly with the first exhibit offered by the defendant viz., that from George and Asa T. Webster to John D. Buzzell.

The next deed offered is from John W. Rand to Watson C. Rand, a quit-claim deed dated July 31, 1872 which simply refers to the Cape Elizabeth land as "A parcel of pasture and woodland" and for description refers to a mortgage deed given to the Buxton & Hollis Savings Bank, but this mortgage deed does not appear in the record.

Finally, we have the warranty deed of Watson C. Rand to Joseph W. Symonds, the defendant's father, dated September 6, 1878, the boundaries in which are as follows:

"Beginning at a pile of stones on line of land formerly of John Woodbury; thence North $85\frac{1}{2}°$ East, twenty three rods to a ditch—thence on same general course by said ditch about sixty rods, across a marsh: thence North $85\frac{1}{2}°$ East, thirty three rods: thence Easterly to and by a stone wall dividing land hereby conveyed and land formerly owned by James Strout, thirty nine rods to land Quit-claimed by J. W. Rand to one Tuttle: thence North two degrees,

forty five minutes west 27½ rods, more or less, by said Tuttle's land to land of one Thompson: thence westerly by said Thompson's land about Sixty rods to land formerly of one Loveitt or Pillsbury: thence South 4½° East by the land of said Pillsbury or unknown, to a fir stump: thence 85½° west by land of unknown about ninety five rods to land formerly owned by one Woodbury: thence South 4½° west by said Woodbury land about twenty one rods to the point of beginning."

The testimony discloses that on both the easterly and westerly portions of the Pillsbury lot and the Cobb lot lying south of it, the land was somewhat higher, while through the center of both lots, there ran a marsh or swale and this appears to account for the ditch delineated on the map as being on the south line of the Cobb lot, and is the ditch referred to in the above description. By reference to the description, just above given, it would seem quite plain that the warranty deed from Rand to Symonds began at the point J, thence running by the south line of the Cobb lot and the ditch to F, and although there is a slight jog from F to G, it is quite plain that the courses are from F to G, thence to B, thence to A, thence to C, to D, to H, and to the point of beginning at J.

A comparison of these two record titles discloses on the one hand in the plaintiff's chain an unfilled gap of one hundred sixteen years followed by a mere quit-claim deed to herself from those who show no record title while on the other hand, the defendant shows record title beginning with a warranty deed dated twenty-three years earlier than the plaintiff's quit-claim and with an unbroken chain to the present time. Moreover, the plaintiff's early deeds are vague and uncertain in description while those of the defendant quite clearly and quite exactly give boundaries which include the land in dispute. It is therefore the opinion of the court that the defendant has the better title, that the jury must have failed to understand the rules of law pertaining to the case and the application of the evidence to those rules of law, with the result that their verdict was manifestedly wrong and the mandate must be,

*Motion sustained.*
*New trial granted.*